IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GLENN HEAGERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:18-cv-01233-CAP-CMS |
| EQUIFAX INFORMATION | ) | |
| SERVICES LLC and NATIONAL | ) | |
| CONSUMER TELECOM & | ) | |
| UTILITIES EXCHANGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1B and the Court's Order of June 6, 2018, Plaintiff

Glenn Heagerty respectfully submits the following response to Defendant's

Statement of Material Facts In Support of Motion for Summary Judgment:

1. Equifax is a consumer reporting agency ("CRA") as defined by the Fair Credit
   Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. (Declaration of Celestina
   Gobin ("Gobin Decl."), Exhibit 1, ¶ 7).

   **RESPONSE**: Admitted.

2. As such, it gathers information about consumers from various sources,
   including banks, collection agencies, and court records, which it uses to create
   credit files on consumers in the United States, including Plaintiff, Mr.
   Heagerty. (*Id.* ¶ 8).

   **RESPONSE**: Admitted.

3. Equifax uses those files to prepare consumer reports for use by its subscribers
   in evaluating the potential credit risk of consumers, among other permissible
   purposes. (*Id.* ¶ 9).

**RESPONSE**: Admitted.

4.   NCTUE is a non-profit member association incorporated under New Jersey law, with its principal place of business in Coppell, Texas. (Declaration of Alan Moore ("Moore Decl."), Exhibit 2, ¶ 4).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.  NCTUE's status as a non-profit association and its principal place of business are not at issue in this case.

5.   NCTUE does not have any employees. (*Id.* ¶ 5; Deposition of Alan Moore ("Moore Depo."), Doc. 51, 10:16). It has a Board of Trustees. (Moore Decl. ¶ 5; Moore Depo. 11:20-23). The Trustees oversee the operations of NCTUE. (Moore Decl. ¶ 5; Moore Depo. 12:5-10).

**RESPONSE**:  Objection.  This Paragraph violates Local Rule 56.1B(1), which requires that each fact in a statement of material facts "be numbered separately." Subject to the foregoing objection, admitted.

6.   NCTUE is a consumer reporting agency under the FCRA. (*Id.* ¶ 6; Deposition of Lisa Willis for Equifax ("Willis Equifax Depo."), Doc. 50, 12:14- 20).

**RESPONSE**:  Admitted.

7.   In its role as a consumer reporting agency, NCTUE maintains data such as payment and account history, reported by telecommunication, pay TV and utility service providers that are members of NCTUE. (*Id.* ¶ 7; Moore Depo. 12:24- 13:12).

**RESPONSE**:  Admitted.

8.   NCTUE and Equifax are separate companies. (Declaration of Lisa Willis ("Willis Decl."), Exhibit 3, ¶ 5; Moore Depo. 24:18-24).

**RESPONSE**:  Admitted.

9.   Because it has no employees, NCTUE retains an outside vendor, Equifax, to provide certain operational services for NCTUE. (Moore Decl. ¶ 8; Willis Decl. ¶ 6; Moore Depo. 14:22-3; Willis Equifax Depo. 20:8-11; Deposition of Lisa

Willis for NCTUE ("Willis NCTUE Depo."), Doc. 50, 6:23-7:5).

**RESPONSE**:  Admitted.

10.     These services, performed by Equifax in its role as a vendor for NCTUE, include (1) sending consumers copies of their NCTUE data file disclosures upon request, and (2) conducting reinvestigations of disputes by consumers concerning the accuracy of their NCTUE data files. (Moore Decl. ¶ 9; Willis Decl. ¶ 8; Moore Depo. 10:23-11:1; Willis NCTUE Depo. 7:6-13).

**RESPONSE**:  Admitted.

11.     NCTUE has a contractual relationship with Equifax whereby Equifax provides these services. (Moore Decl. ¶ 10; Willis Decl. ¶ 7; Moore Depo. 22:11- 18; Willis Equifax Depo. 22:16-23:3, 23:24-24:13). A copy of the 2008 contract (the "Contract") is attached as Exhibit A to the Moore Declaration. (Moore Decl. ¶ 10; Willis Decl. ¶ 7).

**RESPONSE**:  Admitted.

12.     Under the terms of the Contract, Equifax agrees to "comply with the provisions of the FCRA, the Fair and Accurate Credit Transaction Act (the "FACT Act"), Title V of the Graham-Leach-Bliley Act, the Federal Equal Credit Opportunity Act, as amended (the "ECOA), and any other applicable federal consumer credit protection statutes, all state law counterparts thereof, and all applicable regulations promulgated thereunder." (*Id.* ¶ 11; Contract, p. 5, Section 2.3.)

**RESPONSE**:  Admitted.

13.     Equifax further agrees that "in recognition of the principle that the NCTUE Data is the property of NCTUE and its Members, [Equifax] shall not without NCTUE's written approval, comingle with or incorporate NCTUE Data with any other database of a third party." (Moore Decl. ¶ 12; Contract, p. 6, Section 2.7.)

**RESPONSE**:  Admitted.  However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that his NCTUE credit data was comingled with or otherwise incorporated into a third-party database.  Mr. Heagerty contends that the

data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

14. NCTUE's relationship with Equifax has been longstanding. (Moore Decl. ¶ 13).

**RESPONSE**: Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. The length of the relationship between Defendants is not at issue in this case.

15. Over the course of that relationship, NCTUE has not been made aware of any instances, before this case, wherein a consumer has alleged that Equifax has obtained his or her NCTUE consumer report without a permissible purpose under the FCRA. (*Id.* ¶ 14).

**RESPONSE**: Denied. This case was filed in March 2018. No later than July 12, 2016 and as a result of questions raised by Mr. Heagerty, NCTUE had actual knowledge that the NCTUE database and Equifax's ACIS system were "linked together" and that use of the ACIS system resulted in inquires on consumers' NCTUE credit files. Declaration of Glenn Heagerty (the "Heagerty Declaration"), Docket #48-3, ¶ 12 and Exhibit 2 thereto; Second Declaration of Glenn Heagerty, ¶¶ 11-13. Those inquiries were listed on consumer disclosures that NCTUE prepared, including Mr. Heagerty's May 31, 2016 NCTUE disclosure. Deposition of Lisa Willis (the "Willis Depo."), Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2). Defendants admit that Equifax did not have a permissible purpose to make those inquiries. NCTUE's Response to

Plaintiff's First Interrogatories ("NCTUE's 1st ROG Response"), Docket #48-9, Response to Interrogatory No. 2; Equifax's Response to Plaintiff's First Interrogatories ("Equifax's 1st ROG Response"), Docket #48-8, Response to Interrogatory No. 2. Furthermore, "sometime in the summer of 2016," NCTUE's Executive Director, Mr. Alan Moore, learned that when ACIS operators accessed consumers' Equifax credit files, Equifax was simultaneously accessing the consumers' NCTUE credit files in order to generate Insight scores on the consumers. Deposition of Alan Moore (the "Moore Depo.), Docket #51, pp. 31-32. When Mr. Moore learned this fact, he directed NCTUE's outside counsel to give a "cease and desist" notice to Equifax. Moore Depo., pp. 35-36. Equifax failed to comply with that request. Willis Depo., Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).

16.     Over the course of that relationship, NCTUE has found Equifax to be a responsible steward of NCTUE's database. (*Id.* ¶ 15).

    **RESPONSE**: Denied. No later than July 12, 2016, NCTUE had actual knowledge that the NCTUE database and Equifax's ACIS system were "linked together" and that use of the ACIS system resulted in inquires on consumers' NCTUE credit files. Declaration of Glenn Heagerty (the "Heagerty Declaration"), Docket #48-3, ¶ 12 and Exhibit 2 thereto; Second Declaration of Glenn Heagerty, ¶¶ 11-13. Those inquiries were listed on consumer disclosures that NCTUE prepared, including Mr. Heagerty's May 31, 2016 NCTUE disclosure. Deposition of Lisa Willis

(the "Willis Depo."), Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket

#50-7), 52 (Docket #50-8) and 41 (Docket #50-2).  Defendants admit that Equifax did

not have a permissible purpose to make those inquiries. NCTUE's Response to

Plaintiff's First Interrogatories ("NCTUE's 1st ROG Response"), Docket #48-9,

Response to Interrogatory No. 2; Equifax's Response to Plaintiff's First

Interrogatories ("Equifax's 1st ROG Response"), Docket #48-8, Response to

Interrogatory No. 2.  Furthermore, "sometime in the summer of 2016," NCTUE's

Executive Director, Mr. Alan Moore, learned that when ACIS operators accessed

consumers' Equifax credit files, Equifax was simultaneously accessing the

consumers' NCTUE credit files in order to generate Insight scores on the consumers.

Deposition of Alan Moore (the "Moore Depo.), Docket #51, pp. 31-32.  When Mr.

Moore learned this fact, he directed NCTUE's outside counsel to give a "cease and

desist" notice to Equifax.  Moore Depo., pp. 35-36.  Equifax failed to comply with

that request.  Willis Depo., Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51

(Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).

17.     NCTUE understands that Equifax is also a consumer reporting agency and
        that it maintains its own database, separate from NCTUE's database, that
        includes account information different than that found in the NCTUE
        database (such as credit card account histories, mortgage account histories,
        and collection accounts). (*Id.* ¶ 16; *see also* Willis Decl. ¶ 10; Willis Equifax
        Depo. 16:20-17:5; Willis NCTUE Depo. 8:25-9:10).

        **RESPONSE**:  Admitted.

18.     It is NCTUE's understanding and belief, based on its experience with Equifax
        and the Contract, that Equifax does not, and would not, obtain a consumer's

NCTUE consumer report, or provide it to a third party, without a permissible purpose under the FCRA. (*Id.* ¶ 17).

**RESPONSE**: Denied. No later than July 12, 2016, NCTUE had actual knowledge that the NCTUE database and Equifax's ACIS system were "linked together" and that use of the ACIS system resulted in inquires on consumers' NCTUE credit files. Declaration of Glenn Heagerty (the "Heagerty Declaration"), Docket #48-3, ¶ 12 and Exhibit 2 thereto; Second Declaration of Glenn Heagerty, ¶¶ 11-13. Those inquiries were listed on consumer disclosures that NCTUE prepared, including Mr. Heagerty's May 31, 2016 NCTUE disclosure. Deposition of Lisa Willis (the "Willis Depo."), Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2). Defendants admit that Equifax did not have a permissible purpose to make those inquiries. NCTUE's Response to Plaintiff's First Interrogatories ("NCTUE's 1st ROG Response"), Docket #48-9, Response to Interrogatory No. 2; Equifax's Response to Plaintiff's First Interrogatories ("Equifax's 1st ROG Response"), Docket #48-8, Response to Interrogatory No. 2. Furthermore, "sometime in the summer of 2016," NCTUE's Executive Director, Mr. Alan Moore, learned that when ACIS operators accessed consumers' Equifax credit files, Equifax was simultaneously accessing the consumers' NCTUE credit files in order to generate Insight scores on the consumers. Deposition of Alan Moore (the "Moore Depo.), Docket #51, pp. 31-32. When Mr. Moore learned this fact, he directed NCTUE's outside counsel to give a "cease and

desist" notice to Equifax.  Moore Depo., pp. 35-36.  Equifax failed to comply with that request.  Willis Depo., Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).

19.     Based upon its experience with Equifax and the Contract, NCTUE has reason to believe that Equifax only provides NCTUE consumer reports when there is a permissible purpose for doing so. (*Id.* ¶ 18).

**RESPONSE**:   Denied.   No later than July 12, 2016, NCTUE had actual knowledge that the NCTUE database and Equifax's ACIS system were "linked together" and that use of the ACIS system resulted in inquires on consumers' NCTUE credit files.  Declaration of Glenn Heagerty (the "Heagerty Declaration"), Docket #48-3, ¶ 12 and Exhibit 2 thereto; Second Declaration of Glenn Heagerty, ¶¶ 11-13.  Those inquiries were listed on consumer disclosures that NCTUE prepared, including Mr. Heagerty's May 31, 2016 NCTUE disclosure.  Deposition of Lisa Willis (the "Willis Depo."), Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).  Defendants admit that Equifax did not have a permissible purpose to make those inquiries. NCTUE's Response to Plaintiff's First Interrogatories ("NCTUE's 1st ROG Response"), Docket #48-9, Response to Interrogatory No. 2; Equifax's Response to Plaintiff's First Interrogatories ("Equifax's 1st ROG Response"), Docket #48-8, Response to Interrogatory No. 2.  Furthermore, "sometime in the summer of 2016," NCTUE's Executive Director, Mr. Alan Moore, learned that when ACIS operators accessed consumers' Equifax credit files, Equifax was simultaneously accessing the

consumers' NCTUE credit files in order to generate Insight scores on the consumers. Deposition of Alan Moore (the "Moore Depo.), Docket #51, pp. 31-32. When Mr. Moore learned this fact, he directed NCTUE's outside counsel to give a "cease and desist" notice to Equifax. Moore Depo., pp. 35-36. Equifax failed to comply with that request. Willis Depo., Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).

20.     NCTUE also performs oversight and auditing of Equifax to verify that it is executing its duties under the Contract. (*Id.* ¶ 19; Moore Depo. 29:5-30:22).

**RESPONSE**:   Admitted.   However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that NCTUE failed to oversee or audit Equifax. Rather, he contends that by July 2016, NCTUE had actual knowledge that Equifax was making inquiries on NCTUE credit files without a permissible purpose.  *See* Response to Paragraph 19 above.

21.     This includes quarterly meetings between NCTUE and Equifax during which Equifax presents information on the operation of the NCTUE database and any legal compliance issues that may arise from time to time. (*Id.* ¶ 20; Moore Depo. 29:15-22).

**RESPONSE**:   Admitted.   However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that NCTUE failed to meet with Equifax to discuss database and legal compliance issues.  Rather, he contends that by July 2016, NCTUE had actual knowledge that Equifax was making inquiries on NCTUE credit files

without a permissible purpose. *See* Response to Paragraph 19 above.

22. Alan Moore, NCTUE's Executive Director, has almost daily, and at least weekly, calls with Equifax concerning daily operational matters related to various issues including disclosures and disputes, credit alerts, and credit freezes. (*Id.* ¶ 21 Moore Depo. 30:17-22).

   **RESPONSE**: Admitted. However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that NCTUE failed to have regular communications with Equifax regarding operational matters. Rather, he contends that by July 2016, NCTUE had actual knowledge that Equifax was making inquiries on NCTUE credit files without a permissible purpose. *See* Response to Paragraph 19 above.

23. Equifax's database contains its consumer credit files that contain information related to credit card accounts, mortgages, collection accounts, and similar personal credit information. (Willis Decl. ¶ 11).

   **RESPONSE**: Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. The content of Equifax's database and consumer credit files are not at issue in this case.

24. NCTUE's database contains its separate consumer data files that contain information related to television, telephone, and utility accounts. (*Id.* ¶ 12; Moore Depo. 14:8-12).

   **RESPONSE**: Admitted.

25. Equifax does not include NCTUE's consumer data in its own consumer reports that it provides to third parties. (Willis Decl. ¶ 13).

   **RESPONSE**: Admitted. However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.

Whether Equifax includes NCTUE data in consumer reports it sells to third-parties is not an element of any claim asserted by Mr. Heagerty in this case or any defense thereto. Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

26. NCTUE does not include Equifax's consumer data in its own consumer reports that are provided to third parties through Equifax as its vendor. (*Id.* ¶ 14).

    **RESPONSE**: Admitted. However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that Equifax consumer data was included in his NCTUE consumer reports. Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

27. Equifax employees generally do not have access to the NCTUE database. (*Id.* ¶ 15; Deposition of Celestina Gobin ("Gobin Depo."), Exhibit 8, 85:2-4).

    **RESPONSE**: Admitted.

28. The operators that handle consumer disputes and other contacts on NCTUE files do not access the Equifax database when doing so. (*Id.* ¶ 17; Willis Equifax Depo. 74:9-77:1).

    **RESPONSE**: Admitted. However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Heagerty's response thereto. Mr.

Heagerty does not contend that Equifax operators assigned to handle disputes and other issues related to NCTUE consumer files access Equifax's database when performing their job duties. Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

29. The operators that handle consumer disputes and other contacts on Equifax files do not access the NCTUE database when doing so. (Willis Decl. ¶ 18; Willis Equifax Depo. 74:9-77:1; Gobin Depo. 85:2-4).

   **RESPONSE**: Denied. When an ACIS operator accesses a consumer's Equifax credit file to conduct a dispute reinvestigation on that Equifax file, the ACIS system provides the ACIS operator with the consumer's Insight score. Gobin Depo., Docket #49, pp. 88 and 90-91; Willis Depo., Docket #50, p. 66-67. In order to generate the Insight score, Equifax obtains the following data from consumers' NCTUE credit files: account payment history, number of accounts, type of accounts, credit available, credit used, and length of credit history. Equifax's Response to Plaintiff's Second Interrogatories ("Equifax's 2nd ROG Response,") Docket #48-7, Response to Interrogatory No. 3; Willis Depo., Docket #50, pp. 29-30; Gobin Depo., Docket #49, p. 12. When Equifax obtains this credit data from consumers' NCTUE credit files in order to generate an Insight Score, that event is recorded as an "inquiry" on consumers' NCTUE "data reports." Willis Depo., Docket #50, pp. 29-31, 43-47, 49 31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2). The fact

that the data in a consumer's NCTUE credit file is formatted as a credit score, rather than raw credit data, is not material.

30.     Only Equifax employees assigned to NCTUE-related services are given access to the NCTUE database for the purposes of providing disclosures, handling NCTUE consumer disputes, or otherwise performing the vendor services under the Contract. (Willis Decl. ¶ 16; Willis Equifax Depo. 74:9-77:1).

**RESPONSE**:  Denied.  When an ACIS operator accesses a consumer's Equifax credit file to conduct a dispute reinvestigation on that Equifax file, the ACIS system provides the ACIS operator with the consumer's Insight score.  Gobin Depo., Docket #49, pp. 88 and 90-91; Willis Depo., Docket #50, p. 66-67.  In order to generate the Insight score, Equifax obtains the following data from consumers' NCTUE credit files: account payment history, number of accounts, type of accounts, credit available, credit used, and length of credit history.  Equifax's Response to Plaintiff's Second Interrogatories ("Equifax's 2nd ROG Response,") Docket #48-7, Response to Interrogatory No. 3; Willis Depo., Docket #50, pp. 29-30; Gobin Depo., Docket #49, p. 12.  When Equifax obtains this credit data from consumers' NCTUE credit files in order to generate an Insight score, that event is recorded as an "inquiry" on consumers' NCTUE "data report."  Willis Depo., Docket #50, pp. 29-31, 43-47, 49 31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).  The fact that the data in a consumer's NCTUE credit file is formatted as a credit score, rather than raw credit data, is not material.

31.     Equifax maintains policies and procedures to conduct reinvestigations of disputes made by consumers concerning the accuracy of information in their

Equifax credit files. (Gobin Decl. ¶ 10).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.   In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. § 1681i(a) or failed to maintain policies and procedures to conduct reinvestigations of his disputes of the information in his Equifax credit file.   Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

32.    A consumer may contact Equifax to request a consumer disclosure or dispute information reporting in his or her credit file by telephone, mail, or through an internet portal on Equifax's website. (*Id.* ¶ 11).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.   In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. §§ 1681i(a) or 1681g, failed to conduct a reasonable reinvestigation of his disputes of the information in his Equifax credit file or failed to provide him with a consumer disclosure of the information in his Equifax credit file when requested.   Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

33.    When Equifax receives a dispute, it assigns each dispute a unique

confirmation number. (*Id.* ¶ 12).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.   In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. § 1681i(a) or failed to conduct a reasonable reinvestigation of his disputes of the information in his Equifax credit file.   Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

34.     After locating the consumer's credit file, Equifax opens an Automated Consumer Interview System case that tracks the process of the reinvestigation of the disputed information. (*Id.* ¶ 13).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.   In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. § 1681i(a) or failed to conduct a reasonable reinvestigation of his disputes of the information in his Equifax credit file.   Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

35.     Equifax reviews and considers all relevant information including documentation, if any, provided by the consumer and reviews the contents of the consumer's credit file. (*Id.* ¶ 14).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.   In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. § 1681i(a) or failed to conduct a reasonable reinvestigation of his disputes of the information in his Equifax credit file.   Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

36.     If Equifax is able to make updates based on the information it has, it will do
         so. (*Id.* ¶ 15).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.   In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. § 1681i(a) or failed to conduct a reasonable reinvestigation of his disputes of the information in his Equifax credit file.   Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

37.     If further investigation is required, Equifax notifies the source of the account
         information (referred to as the "data furnisher") of the consumer's dispute,
         identifies the nature of the consumer's dispute, and includes the consumer's
         account information as it then appears in Equifax's credit file. (*Id.* ¶ 16).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material

to Defendants' Motion or Mr. Heagerty's response thereto. In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. § 1681i(a) or failed to conduct a reasonable reinvestigation of his disputes of the information in his Equifax credit file. Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

38.     Upon completion of the reinvestigation, Equifax sends the consumer the results along with a summary of the consumer's rights under the FCRA, additional steps the consumer may take, and a description of the procedures used to reinvestigate the dispute. (*Id.* ¶ 17).

**RESPONSE**: Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. In this case, Mr. Heagerty does not contend that Equifax violated 15 U.S.C. § 1681i(a), failed to conduct a reasonable reinvestigation of his disputes of the information in his Equifax credit file or failed to notify him of the results of such reinvestigations. Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

39.     Equifax operators handling consumer disputes and other contacts on Equifax files are able to view the consumer's Insight credit score ("Insight Score") on their computer screen. (Willis Decl. ¶ 19; Gobin Decl. ¶¶ 18, 29; Willis Equifax Depo. 26:21-25; Gobin Depo. 88:4-20).

**RESPONSE**: Admitted.

40. The Insight Score is calculated using an algorithm that incorporates elements from the consumer's Equifax and NCTUE files. (Willis Decl. ¶ 20; Willis Equifax Depo. 26:23-25, 29:21-30:15). The Insight Score is calculated using only data attributes of the NCTUE data file, not the NCTUE data file itself. (Willis Equifax Depo. 29:21-30:5). Examples of the Insight Score display are attached as Exhibit A (with relevant portion highlighted) to the Willis Declaration (Willis Decl. ¶ 19), and the Gobin Declaration (Gobin Decl. ¶ 29).

**RESPONSE**: Objection. This Paragraph violates Local Rule 56.1B(1), which requires that each fact in a statement of material facts "be numbered separately." Subject to the foregoing objection, Mr. Heagerty admits the first and third sentences of Paragraph 40. Mr. Heagerty denies the second sentence of Paragraph 40. In order to calculate an Insight score on consumers, like Mr. Heagerty, Equifax accesses NCTUE credit files and obtains the following data: the consumer's account payment histories, the number of accounts in the consumer's name, type of accounts that the consumer holds, the consumer's credit available, the consumer's credit used and the length of the consumer's credit history. Equifax's 2nd ROG Response, Docket #48-7, Response to Interrogatory No. 3; Willis Depo., Docket #50, pp. 29-30; Gobin Depo., Docket #49, p. 12. This data bears on consumers' "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" and is a "consumer report" under 15 U.S.C. 1681a(d). Defendants' use of the phrase "data attributes" is immaterial jargon.

41. The operators are also able to view the Insight Score if they access a consumer's file to do other things, such as: process a request for a consumer disclosure, add a fraud alert to the consumer's file, answer a question a

consumer has about their file, or during other consumer-initiated contact with Equifax. (Gobin Decl. ¶ 19; Gobin Depo. 88:4-20).

**RESPONSE**: Admitted.

42. The Equifax operators are not able to see or otherwise access the full NCTUE data file or any of the data used to calculate the Insight Score. (Willis Decl. ¶ 21; Gobin Decl. ¶ 22).

**RESPONSE**: Admitted.

43. Their view is limited to the Insight Score only, *i.e.*, the highlighted information shown in Exhibit A to the Willis and Gobin Declarations. (Willis Decl. ¶ 22; Gobin Decl. ¶ 29).

**RESPONSE**: Admitted.

44. The operators that handle contacts and/or disputes that consumers make concerning the contents of their Equifax credit files do not have access to the consumers' NCTUE data files or the NCTUE database. (Gobin Decl. ¶ 27).

**RESPONSE**: Admitted.

45. Each time that Mr. Heagerty contacted Equifax and Equifax accessed Mr. Heagerty's credit file, an Insight Score was generated for him. (*Id.* ¶ 28).

**RESPONSE**: Admitted.

46. In responding to a contact and/or dispute from a consumer, the operator handling the matter may need to access the Equifax credit file multiple times. (*Id.* ¶ 30). For example, the operator may access the file once to start an investigation into the dispute and again to make a change to the credit file based on the investigation. (*Id.*). Each access will result in the generation of an Insight Score. (*Id.*).

**RESPONSE**: Objection. This Paragraph violates Local Rule 56.1B(1), which

requires that each fact in a statement of material facts "be separately numbered."

Subject to the foregoing objection, admitted.

47. The operators handling the Equifax consumer contacts do not use the Insight

Score for the purposes of determining a consumer's eligibility for credit, insurance, or employment and it is only available for the consumer's knowledge and benefit. (Willis Decl. ¶ 23; Gobin Decl. ¶ 20; Gobin Depo. 88:17-20).

**RESPONSE**: Admitted. Equifax did not have a permissible purpose to obtain a consumer report on Mr. Heagerty from NCTUE.

48. Mr. Heagerty's NCTUE consumer report was not provided by NCTUE to Equifax for the use in determining his eligibility for credit, employment, or insurance at any time. (Moore Decl. ¶ 23; Willis Decl. ¶ 29).

**RESPONSE**: Admitted. Equifax did not have a permissible purpose to obtain a consumer report on Mr. Heagerty from NCTUE.

49. NCTUE does not collect consumer information with the expectation that it will be used by Equifax, in its role as NCTUE's vendor, to determine a consumer's eligibility for credit, employment, or insurance. (Moore Decl. ¶ 24).

**RESPONSE**: Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. The "collection" element of the "purpose" requirement of the definition of "consumer report" is based on the reason why the information at issue was originally collected by the consumer reporting agency, not the use to which that information was put by the recipient of the information. NCTUE originally collected the credit data in Mr. Heagerty's NCTUE file so it could be sold in the form of "data reports," which are "consumer reports," to NCTUE's members for credit purposes. NCTUE's 1st RFA Response, Docket #48-5, ¶¶ 14-15 and 17; Equifax's 1st RFA Response, Docket #48-4, ¶¶ 9-10.

50. Equifax does not include NCTUE's consumer data in its own consumer reports that it provides to third parties. (Willis Decl. ¶ 13).

**RESPONSE**: Admitted. However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that Equifax included NCTUE credit data in Equifax consumer reports about him. Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

51. Equifax did not provide Plaintiff's NCTUE data file to any third parties. (*Id.* ¶ 28).

**RESPONSE**: Admitted. However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that Equifax provided his NCTUE credit data to any other person or entity. Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

52. Equifax operators do not share the Insight Score with other operators. (Gobin Decl. ¶ 21).

**RESPONSE**: Admitted. However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that Equifax operators share his Insight score with one another. Mr. Heagerty contends that the data that Equifax obtained from his

NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

53.     Equifax operators handling the Equifax consumer disputes and other contacts do not provide the Insight Score to any third parties outside of Equifax. (Gobin Decl. ¶ 23; Willis Decl. ¶ 24).

**RESPONSE**:   Admitted.   However, pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto. Mr. Heagerty does not contend that Equifax provided his Insight score to any other person or entity.   Mr. Heagerty contends that the data that Equifax obtained from his NCTUE credit file was a consumer report and that Defendants violated his privacy and caused him emotional distress when Equifax was allowed to obtain such reports without a permissible purpose.

54.     Equifax operators will provide the Insight Score to a consumer if the consumer requests it and it is made available in this process for the benefit of the consumer should the consumer request it. (Gobin Decl. ¶ 23; Willis Decl. ¶ 23 Willis Equifax Depo. 63:23-64:18; Gobin Depo. 88:17-89:1).

**RESPONSE**:  Admitted.

55.     Mr. Heagerty worked for Equifax from 1991 to 1995. (Deposition of Glenn Heagerty ("Heagerty Depo."), Doc. 54, 17:5-8).

**RESPONSE**:  Pursuant to Local Rule 56.1B(2)a(2)(iii), this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.  Mr. Heagerty's previous employment with Equifax is not at issue in this case and pre-dates NCTUE's contractual relationship by Equifax by 13 years.

56. Equifax's records reflect that Mr. Heagerty initiated contact with Equifax on at least 38 occasions between February 2014 and March 2018. (Gobin Decl. ¶ 25).

   **RESPONSE**: Admitted.

57. Most of these contacts concerned the contents of his Equifax credit file, not his data file with NCTUE. (*Id.* ¶ 26).

   **RESPONSE**: Admitted.

58. The Insight Score inquiries reflected on Mr. Heagerty's file do not reflect the use of Mr. Heagerty's NCTUE file for the purposes of determining his eligibility for credit, insurance, or employment. (*Id.* ¶ 31).

   **RESPONSE**: Admitted. Defendants did not have a permissible purpose to

access/allow access to Mr. Heagerty's NCTUE credit file.

59. The inquiries that appear on Mr. Heagerty's NCTUE data file disclosure that are referenced in the Complaint only reflect the generation of an Insight Score in relation to disputes or other contacts that Mr. Heagerty initiated with Equifax. (Willis Decl. ¶ 25; *see also* Willis Equifax Depo. 36:7-11).

   **RESPONSE**: Denied. The inquires that appear on Mr. Heagerty's NCTUE

file disclosures evidence Equifax obtaining the following data from Mr. Heagerty's

NCTUE credit file: his account payment history, the number of accounts in his name,

the type of accounts that he held, his credit available, his credit used and the length

of his credit history. Equifax's 2nd ROG Response, Docket #48-7, Response to

Interrogatory No. 3; Willis Depo., Docket #50, pp. 29-30; Gobin Depo., Docket #49,

p. 12.

60. The generation of an Insight Score during the handling of a consumer's dispute or other contact with Equifax does not have any impact at all on any credit score, including their Insight Score. (*Id.* ¶ 26).

**RESPONSE**:  Admitted.

61.     Equifax did not provide Mr. Heagerty's NCTUE data file to any third parties
        in the process of handling his disputes and other contacts with Equifax. (Gobin
        Decl. ¶ 32; Willis Decl. ¶ 28).

        **RESPONSE**:  Admitted.  However, pursuant to Local Rule 56.1B(2)a(2)(iii),

this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.

Mr. Heagerty does not contend that Equifax provided his NCTUE credit data to any

other person or entity.  Mr. Heagerty contends that the data that Equifax obtained

from his NCTUE credit file was a consumer report and that Defendants violated his

privacy and caused him emotional distress when Equifax was allowed to obtain such

reports without a permissible purpose.

62.     Equifax did not provide Mr. Heagerty's Insight Score to any third parties in
        the process of handling his disputes and other contacts with Equifax. (Gobin
        Decl. ¶ 33).

        **RESPONSE**:  Admitted.  However, pursuant to Local Rule 56.1B(2)a(2)(iii),

this fact is not material to Defendants' Motion or Mr. Heagerty's response thereto.

Mr. Heagerty does not contend that Equifax provided his Insight score to any other

person or entity.  Mr. Mr. Heagerty contends that the data that Equifax obtained

from his NCTUE credit file was a consumer report and that Defendants violated his

privacy and caused him emotional distress when Equifax was allowed to obtain such

reports without a permissible purpose.

63.     When asked to identify all instances in which he claims he suffered damages
        as a result of Equifax's alleged conduct as set forth in the Complaint, Mr.
        Heagerty answered:

Plaintiff has suffered damages in the form of invasions of his statutorily-protected right of privacy. These invasions occurred each time Equifax obtained Plaintiff's NCTUE consumer report without a permissible purpose. The dates on which these invasions occurred are set forth in the "inquiries" section of Plaintiff's NCTUE file, some of which are listed in Paragraph 10 of the Complaint. Plaintiff has also suffered damages in the form of emotional distress, after learning of Defendants' violations of his right of privacy. For further information, see responses to Interrogatory Nos. 11 and 23, which are incorporated herein by reference.

(Plaintiff's Response to Defendant Equifax's First Interrogatories ("Equifax's Interrogatories"), Exhibit 4, Interrogatory No. 19; Heagerty Depo. 178:7-16; Heagerty Depo. Exh. 8).

**RESPONSE**: Admitted.

64. Mr. Heagerty has not sustained and is not seeking any lost wages in this case from Equifax or as a result of any act or omission of NCTUE. (Plaintiff's Response to Defendant Equifax Information Services LLC's First Request for Admissions ("Equifax Request for Admission"), Exhibit 5, Request for Admission No. 1; Plaintiff's Response to Defendant NCTUE's First Request for Admissions ("NCTUE Request for Admission"), Exhibit 6, Request for Admission No. 1).

**RESPONSE**: Admitted.

65. Mr. Heagerty has not sustained and is not seeking any out-of-pocket financial damages in this case from Equifax or as a result of any act or omission of NCTUE. (Equifax Request for Admission No. 2; NCTUE Request for Admission No. 2).

**RESPONSE**: Admitted.

66. Mr. Heagerty has not lost any money as a result of the conduct of Equifax or NCTUE alleged in the Complaint. (Equifax Request for Admission  No. 3; NCTUE Request for Admission No. 3).

**RESPONSE**: Admitted.

67. Mr. Heagerty has not been denied credit as a result of Equifax's access of his NCTUE consumer report. (Equifax Request for Admission No. 11; Heagerty

Depo. 141:12-14 (Mr. Heagerty does not know whether he was denied credit on the basis of an Insight Score).

**RESPONSE**: Admitted.

68.  From the date that Mr. Heagerty first saw Equifax inquiries on his NCTUE disclosure until at least January 14, 2019, Mr. Heagerty believed that the NCTUE inquiries meant that the attorneys at King & Spalding were spying on him, and "it was terrifying." (Heagerty Depo. 52:3-23, 55:11-25, 58:17-23). He believed that King & Spalding attorneys were obtaining information from his internet and telecommunications providers to examine such things as his entertainment choices and how he lived. (*Id.* 56:1-57:12).

**RESPONSE**: Objection.  This Paragraph violates Local Rule 56.1B(1), which requires that each fact in a statement of material facts "be separately numbered." Subject to the foregoing objection, denied.  Mr. Heagerty did not know that Equifax's attorneys prompted some of the pre-September 2015 inquiries on his NCTUE credit file until July 2016.  Second Heagerty Declaration, ¶¶ 11-13.  Furthermore, Mr. Heagerty never believed that Equifax's attorneys were involved in all the Equifax-related inquiries that appear on his NCTUE disclosure, but only some of them that pre-dated September 2015.  *Id.*

69.  Mr. Heagerty testified that his emotional distress claims consist mainly of sleeplessness, inability to focus, lethargy, loss of energy, and depression. (*Id.* 32:20-33:4). He testified that his emotional distress claims were caused by his belief that NCTUE provided his NCTUE consumer report to Equifax. (Doc. 1, ¶¶ 25-27; Heagerty Depo. 64:9-14, 68:19-69:2). He held that belief at least until the time of his deposition on January 17, 2019. (Heagerty Depo. 68:19-69:2, 69:19- 70:13). He held that belief even though he heard Ms. Willis testify that Equifax did not receive his NCTUE consumer report or his NCTUE data file; Equifax only received NCTUE data attributes, and Equifax operators has access to the Insight Score only. (Heagerty Depo. 68:19-69:2, 69:19-70:13; 103:24-104:9).

**RESPONSE**:  Objection.  This Paragraph violates Local Rule 56.1B(1), which requires that each fact in a statement of material facts "be separately numbered." Furthermore, this "fact" and particularly Defendants' characterization of Mr. Heagerty's testimony regarding Ms. Willis' testimony is confusing and argumentative.  Subject to the foregoing objections, Mr. Heagerty admits that the symptoms of his emotional distress include sleeplessness, inability to focus, lethargy, loss of energy, and depression.  He also admits that his emotional distress was and is caused by the fact that Equifax was allowed to access his NCTUE credit data without a permissible purpose.  Second Heagerty Declaration, ¶¶ 5-10.  Mr. Heagerty denies the remainder of this Paragraph.  Mr. Heagerty's emotional distress persists to this day.  Second Heagerty Declaration, ¶ 16.  Mr. Heagerty considers his NCTUE credit data private, whether it is in the form of raw credit data or has been used to generate a credit score.  *Id*., ¶ 8.  Mr. Heagerty suffers emotional distress as a result of Equifax using the data in his NCTUE credit file to generate Insight scores without a permissible purpose.  *Id*., ¶ 10.  Equifax obtained the following data from Mr. Heagerty's NCTUE credit file: his account payment history, the number of accounts in his name, the type of accounts that he held, his credit available, his credit used and the length of his credit history.  Equifax's 2nd ROG Response, Docket #48-7, Response to Interrogatory No. 3; Willis Depo., Docket #50, pp. 29-30; Gobin Depo., Docket #49, p. 12.  That data bears on consumers' "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of

living" and is a "consumer report" under 15 U.S.C. 1681a(d). Defendants' use of the

phrase "data attributes" is irrelevant jargon.

70. Mr. Heagerty has never gone to a doctor about these issues. (*Id.* 44:17-45:25).

    **RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

71. The only person who has diagnosed these issues is Mr. Heagerty, and no
    medical professional has told him the issues were caused or exacerbated by
    Equifax or NCTUE. (*Id.*).

    **RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

72. Mr. Heagerty did not keep a record of the dates on which he experienced his
    alleged physical symptoms associated with stress and anxiety. (Equifax's
    Interrogatory No. 11; Plaintiff's Response to Defendant NCTUE's First
    Interrogatories ("NCTUE's Interrogatories"), Exhibit 7, Interrogatory No. 9).

    **RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

73. Rather, he alleges that they occur episodically and when circumstances caused
    him to think about the facts of this case. (*Id.*).

    **RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

74. Mr. Heagerty has not taken any medications or received any medical
    treatment for these symptoms. (*Id.*).

    **RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

75. Mr. Heagerty has not sustained and is not claiming any damage to his

reputation in this case as a result of the conduct of Equifax or NCTUE alleged in the Complaint. (Equifax Request for Admission No. 6; NCTUE Request for Admission No. 6).

**RESPONSE**: Admitted.

76. Mr. Heagerty has not received any medical treatment as a result of the conduct of Equifax or NCTUE alleged in the Complaint. (Equifax Request for Admission No. 5; NCTUE Request for Admission No. 5).

**RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

77. Mr. Heagerty has not taken nor been prescribed any medications as a result of the conduct of Equifax or NCTUE alleged in the Complaint. (Equifax Request for Admission No. 8; NCTUE Request for Admission No. 8).

**RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

78. Mr. Heagerty has not taken any over-the-counter medications as a result of the conduct of Equifax or NCTUE alleged in the Complaint. (Equifax Request for Admission No. 9; NCTUE Request for Admission No. 9).

**RESPONSE**: Admitted. However, this fact goes to the credibility of Mr.

Heagerty's claim for emotional distress and is not material on summary judgment.

79. Mr. Heagerty's factual basis for his belief that Equifax and NCTUE acted to willfully violate the law and/or willfully harm him or his credit file is that he believes Equifax made inquiries on his NCTUE file on more than 90 occasions, "which are identified by date in paragraph 10 of the Complaint and on Exhibit A to Plaintiff's first interrogatories, document requests and requests for admissions, which were served on Defendants on June 4, 2018." (Equifax's Interrogatory No. 13; NCTUE Interrogatory No. 11; Heagerty Depo. 178:7-16; Heagerty Depo. Exh. 8).

**RESPONSE**: Denied as stated. The fact that Defendants accessed/allowed

access to Mr. Heagerty's NCTUE credit file is only *part* of his basis for contending

that Defendants willfully violated the FCRA. Mr. Heagerty's contention is also

based on the following: Mr. Heagerty did not authorize Equifax to access his

NCTUE credit file or obtain that data. Second Heagerty Declaration, ¶ 9. Defendants

concede that they did not have a permissible purpose to provide/obtain that data

from Mr. Heagerty's NCTUE credit file. NCTUE's 1st ROG Response, Docket #48-

9, Response to Interrogatory No. 2; Equifax's 1st ROG Response, Docket #48-8,

Response to Interrogatory No. 2. "[S]ometime in the summer of 2016," NCTUE's

Executive Director, Mr. Alan Moore, learned that when ACIS operators accessed

consumers' *Equifax* credit files, Equifax was simultaneously accessing the

consumers' *NCTUE's* credit files in order to generate Insight scores on the

consumers. Deposition of Alan Moore (the "Moore Depo.), Docket #51, pp. 31-32.

When Mr. Moore learned this fact, he directed NCTUE's outside counsel to give a

"cease and desist" notice to Equifax. Moore Depo., pp. 35-36. Equifax failed to

comply with that request. Willis Depo., Docket #50, pp. 43-44, 49 and 30-31 and

Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).

80.    Equifax did not act to willfully harm Mr. Heagerty or his credit file. (Gobin
       Decl. ¶ 34; Willis Decl. ¶ 27).

   **RESPONSE**: Objection. Paragraph 80 sets forth a "legal conclusion" in

violation of Local Rule 56.1B(1)(c). Subject to the foregoing objection, Paragraph 80

is denied. Equifax obtained the following data from Mr. Heagerty's NCTUE credit

file on 185 occasions: his account payment history, the number of accounts in his

name, the type of accounts that he held, his credit available, his credit used and the

length of his credit history.  Equifax's 2nd ROG Response, Docket #48-7, Response

to Interrogatory No. 3; Willis Depo., Docket #50, pp. 29-30 and Exhibits 51 (Docket

#50-7), 52 (Docket #50-8) and 41 (Docket #50-2); Gobin Depo., Docket #49, p. 12.

Defendants concede that they did not have a permissible purpose to provide/obtain

that data from Mr. Heagerty's NCTUE credit file.  NCTUE's 1st ROG Response,

Docket #48-9, Response to Interrogatory No. 2; Equifax's 1st ROG Response, Docket

#48-8, Response to Interrogatory No. 2.

81.     NCTUE did not take any action to willfully harm Plaintiff or his NCTUE data
        file. (Moore Decl. ¶ 22).

        **RESPONSE**:   Objection.   Paragraph 81 sets forth a "legal conclusion" in

violation of Local Rule 56.1B(1)(c).  Subject to the foregoing objection, Paragraph 81

is denied.  By July 2016, NCUTE personal, attorneys and its Executive Director all

had actual knowledge that Equifax was making inquiries on NCTUE's consumer

credit database through the ACIS system.  Heagerty Declaration, Docket #48-3, ¶ 12

and Exhibit 2 thereto; Moore Depo., Docket #51, pp. 31-32. Each time it made such

an inquiry, Equifax obtained the following data from Mr. Heagerty's NCTUE credit

file: his account payment history, the number of accounts in his name, the type of

accounts that he held, his credit available, his credit used and the length of his credit

history.  Equifax's 2nd ROG Response, Docket #48-7, Response to Interrogatory No.

3; Willis Depo., Docket #50, pp. 29-30 and Exhibits 51 (Docket #50-7), 52 (Docket #50-

8) and 41 (Docket #50-2); Gobin Depo., Docket #49, p. 12. Defendants concede that they did not have a permissible purpose to provide/obtain that data from Mr. Heagerty's NCTUE credit file. NCTUE's 1st ROG Response, Docket #48-9, Response to Interrogatory No. 2; Equifax's 1st ROG Response, Docket #48-8, Response to Interrogatory No. 2. NCTUE subsequently demanded that Equifax "cease and desist." Moore Depo., pp. 35-36. Equifax refused to do so and continued that practice through the time that the complaint was filed in this case. Willis Depo., Docket #50, pp. 43-44, 49 and 30-31 and Exhibits 51 (Docket #50-7), 52 (Docket #50-8) and 41 (Docket #50-2).

This 17th day of June, 2019.

**MCRAE BERTSCHI & COLE LLC**
Suite 200, 1350 Center Drive
Dunwoody, Georgia 30338

*Counsel for Plaintiff*

/s/ Craig E. Bertschi
Craig E. Bertschi
Georgia Bar No. 055739
ceb@mcraebertschi.com
678.999.1102

Charles J. Cole
Georgia Bar No. 176704
cjc@mcraebertschi.com
678.999.1105