# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| GLENN HEAGERTY, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) 1:18-cv-01233-CAP-CMS |
| | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT EQUIFAX INFORMATION SERVICES LLC AND NATIONAL CONSUMER TELECOM & UTILITIES EXCHANGE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, Equifax Information Services LLC ("Equifax") and National Consumer Telecom & Utilities Exchange, Inc.'s ("NCTUE"), file their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's PMSJ," Doc. 48). For the reasons below and in Defendants' motion for summary judgment ("Defendants' MSJ," Doc. 53), Plaintiff's motion should be denied and Defendants' motion should be granted.

## INTRODUCTION

Plaintiff moves for partial summary judgment on the theory that NCTUE provided a consumer report derived from NCTUE data to Equifax numerous times. The simple fact is that NCTUE never provided such a report. Instead, as set forth

in Equifax's MSJ, an Insight credit score, calculated using high-level data from Plaintiff's Equifax and NCTUE credit files, was visible on the computer screens of Equifax's operators when they handled Plaintiff's consumer disputes related to his Equifax credit file. The NCTUE data used to calculate the Insight scores, in this context, was not within the Fair Credit Reporting Act's ("FCRA") definition of consumer report because it was never compiled, used, or intended to be used, for the purposes of determining Plaintiff's eligibility for credit, insurance, or employment by Equifax. To hold otherwise would ignore the current-day, real-world manner in which the Insight scores were utilized (or, more to the point, not utilized) by these two companies in this unique context. The Insight scores (and NCTUE's data used to calculate them) were not, on these narrow facts, consumer reports under the FCRA, and Plaintiff's PMSJ should be denied on this basis alone.[1]

---

[1] As a preliminary matter, the Court should first decide whether Plaintiff has standing under Article III of the U.S. Constitution. As Defendants argued in their own MSJ (Doc. 53-1, pp. 7-15), and further below, Plaintiff has not suffered any concrete harm under the facts and his Complaint should be dismissed accordingly. Even Plaintiff recognizes that, at worst, this is a case of "one credit reporting agency, Equifax" providing his consumer report to "another credit reporting agency, NCTUE." (Doc. 48-1 at 2.) Such a consumer reporting agency-to-consumer reporting agency exchange of information under the circumstances presented here cannot possibly have caused Plaintiff any legally recognizable harm

Even if the Court were to determine that (1) Plaintiff has standing under Article III, and (2) the Insight scores were consumer reports under the FCRA, Plaintiff's PMSJ should still be denied. Plaintiff has failed to present any evidence that his NCTUE data was used improperly or provided to any third parties outside of Equifax and NCTUE. The transmission of data between two regulated consumer reporting agencies under the unique circumstances presented here did not result in the exposure of consumer report data to anyone who could use it for any improper purpose. Further, Plaintiff has failed to present evidence that he was denied credit based upon the use of his NCTUE data. The fact that the data was used to calculate an Insight Score, which was not used for a credit decision, but instead for customer service as part of Plaintiff's dispute, further demonstrates the narrow use of the data under circumstances which neither presented nor caused any harm to Plaintiff. Accordingly, Plaintiff's PMSJ should be denied.

NCTUE similarly did not violate the FCRA. It had a longstanding contractual relationship with Equifax and had every reason to believe that Equifax, a national consumer reporting agency, would comply with the FCRA in its use and management of NCTUE's data. NCTUE conducted periodic audits of Equifax to

---

and amounts to nothing more than a "bare procedural violation," insufficient to confer standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

make sure that it did so. When NCTUE learned of the practice at issue in this lawsuit after it was filed in 2018, NCTUE, in an abundance of caution, instructed Equifax to stop generating the Insight score in connection with Equifax's handling of Equifax consumer disputes. Equifax indisputably did so. NCTUE, not Plaintiff, is entitled to summary judgment on these facts.

**ARGUMENT AND CITATION OF AUTHORITY**

**I. PLAINTIFF'S MOTION FURTHER DEMONSTRATES HIS LACK OF STANDING UNDER ARTICLE III.**

In their MSJ, Defendants demonstrated that Plaintiff suffered no concrete harm and therefore lacks standing under Article III. *See*, Doc. 53-1 at pp. 7-15. Plaintiff's PMSJ further proves the point. Just because Plaintiff "did not understand why one credit reporting agency, Equifax, would provide his consumer report to another credit reporting agency, NCTUE," (Doc. 48-1 at 2) does not mean he suffered the type of harm sufficient to confer standing. Such a consumer reporting agency-to-consumer reporting agency exchange, particularly on the narrow facts presented here, did not harm Plaintiff in any manner.

The case of *Harmon v. RapidCourt, LLC*, No. CV 17-5688, 2018 WL 6062355, at *5 (E.D. Pa. Nov. 20, 2018) provides an example of how such an exchange is harmless to a consumer. In *Harmon*, the Plaintiff alleged that RapidCourt transmitted certain criminal record information to Checkr, that both

RapidCourt and Checkr were CRAs, and that the criminal record information transmitted was a consumer report. *Id*. at *1-2. The plaintiff further alleged that he suffered various forms of emotional distress as a result of the unauthorized disclosure. *Id*. RapidCourt moved to dismiss the complaint on standing grounds because "the disclosure of information to another consumer reporting agency, without more, does not constitute a concrete harm." *Id*. at *4. The court agreed and, citing to *Spokeo*, stated that it was "unwilling to find that the transmission of allegedly prohibited information from one consumer reporting agency to another is a concrete injury that is real and not abstract." *Id*. at *5 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)) (internal quotations omitted). Importantly, the court further held that:

> With his four asserted injuries, Harmon is merely winging it in an attempt to manufacture an injury in fact. Although embarrassment, frustration, and other emotional harms are cognizable under the FCRA, the Court finds that such harms arising solely from disclosure of information to a consumer reporting agency, as Harmon has alleged, do not satisfy the Article III injury requirement.

*Id.*[2] So too here. Plaintiff simply could not be harmed by these events and his Complaint should be dismissed for lack of standing.

## II. PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE NCTUE DID NOT PROVIDE PLAINTIFF'S CONSUMER REPORT TO EQUIFAX.

Defendants have demonstrated, in their own MSJ, why the information exchanged between NCTUE and Equifax was not a consumer report and incorporate those arguments here. Doc. 53-1 at pp. 16-21. In his PMSJ, Plaintiff offers nothing to change the analysis. To the contrary, he merely assumes, in conclusory fashion, that the data exchanged between Equifax and NCTUE was a consumer report. Indeed, Equifax as a company does not extend credit, and Plaintiff has failed to present any evidence to the contrary. Because Equifax does not extend credit, the subject data could not possibly have been used, prepared or provided to determine Plaintiff's eligibility for credit. Thus, it could not constitute a consumer report.

Plaintiff concedes that the only information at issue is the Insight score and that the Insight score "is a credit scoring model that was developed by Equifax, and is based, in part, on information contained in a consumer's NCTUE credit files."

---

[2] Although *Harmon* is from a federal court outside of this jurisdiction, there are numerous cases in which this Court has found a lack of standing under *Spokeo*. *See* Doc. 53-1 at pp. 9-11.

Doc. 48-1 at 6. He alleges that "[i]n order to generate the Insight Score, Equifax obtains the following data from consumer's NCTUE credit files: account payment history, number of accounts, type of accounts, credit available, credit used, and length of credit history." *Id*. He does not allege that any Equifax operators who may have been able to view his Insight scores, knew the names of any of his NCTUE-reporting creditors, or had access to anything other than the score itself.

Plaintiff makes much of the unremarkable admissions by NCTUE and Equifax that NCTUE data reports are consumer reports. *Id*. at pp. 13-14; 17; 21. Plaintiff misconstrues these admissions in an effort to prove the information exchanged between NCTUE and Equifax is a consumer report. Relevant here, Plaintiff argues:

> [T]he data in NCTUE's database…is sold to NCTUE members in the form of data reports, which are consumer reports…those consumer reports are used by NCTUE's members to make credit decisions regarding consumers…Thus, the data that NCTUE provided to Equifax meets the "expectation of use" and "reason for compilation" elements of the purpose requirement."

*Id*. at p. 17.

Plaintiff has not produced any evidence that his entire NCTUE credit file, showing all his utility creditors, identifying information, full account histories, and similar credit information - such as is provided to NCTUE's members upon request

7

- was ever provided to Equifax. This is because Equifax, an entity that does not extend credit, neither requested nor received Plaintiff's entire NCTUE credit file. The Insight Score does not contain or constitute an NCTUE consumer report. As discussed above, Equifax operators did not see, or even have the ability to access, anything but the Insight score itself when viewing Plaintiff's Equifax file. Declaration of Lisa Willis, ¶¶ 23-30. Accordingly, Plaintiff's motion should be denied because the information at issue here was not a consumer report.

Plaintiff's *Yang* analysis (Doc. 48-1 at 11- 19) does not prove otherwise. Plaintiff admits Equifax did not use the information at issue here for credit-related purposes. *See* Doc. 48-1 at p. 14. Instead, he argues the information is still a consumer report based on the Eleventh Circuit's holding in *Yang*. *Id*. at 15-17. Defendants discussed the *Yang* case in their motion for summary judgment, so only a brief recap is warranted here. Relevant to this discussion, *Yang* involved "Inquiry Access Reports" or "IARs" compiled and produced by Equifax and sold to GEICO. 146 F.3d 1320 (11th Cir. 1998). GEICO used the IAR as part of its investigation of an insurance claim made by Yang. *Id*. The Eleventh Circuit, interpreting the language of 1681a(d), found that although GEICO did not use the IAR for a credit-related purpose, the IAR was still a consumer report because Equifax compiled the information and expected IARs to be used as consumer

reports. *Id*. Plaintiff rests his argument here on NCTUE's reason for compilation and its expectation of use. Doc. 48-1 at pp. 14-17.

The parties in *Yang* did not dispute the purpose for which Equifax compiled the IARs nor Equifax's expected use of the IARs and so the Eleventh Circuit necessarily did not reach those issues. Not so here. The parallel to IARs in this case is not NCTUE data reports, as Plaintiff argues. Data reports were not provided and are not relevant here. The information at issue is the NCTUE data. The record evidence shows that NCTUE did not provide NCTUE data to Equifax with the expectation that Equifax would use it for credit-related purposes. Doc. 53-2 at ¶¶ 39-54. Nor did NCTUE compile the NCTUE data so that Equifax could use it for credit-related purposes. *Id*. Indeed, as discussed above and in its own MSJ, Equifax does not, as a company, extend credit, the purpose for which a data report would be used. Plaintiff's motion should be denied and Defendants' motion granted because the NCTUE data does not meet the "reason for compilation" or "expectation of use" requirements of *Yang*.

*Yang* is further distinguishable because it involved the transmission of information from a CRA to an outside third-party. In contrast, the information here never left Equifax. In particular, *Yang* involved the transmission of an IAR from Equifax, a CRA, to GEICO, a third-party insurance company that is not a CRA.

The IAR provided to GEICO included information regarding the entities that had requested Mr. Yang's consumer report from Equifax. This is information GEICO did not otherwise have. The information at issue here appeared to Equifax operators in the form of a three-digit number—the Insight Score. At most this was the *partial* product of NCTUE data. The Insight Score was based on information Equifax already had available either in its own database or in the database it maintained on behalf of NCTUE. This is a far cry from the consumer reports at issue in *Yang* where GEICO was able to view the actual data—in that case inquiries—contained in the IARs.

Finally, Plaintiff points to no evidence that Equifax ever distributed the Insight Score, or any component data thereof, to a third party. This distinction is important because *Yang* involved the distribution of a consumer's personal information to an outside third party—the exact harm Congress sought to prevent through the permissible purpose provisions of the FCRA. GEICO received personal information about Plaintiff that it did not otherwise possess and to which it was not otherwise entitled. Here, however, none of the information left Equifax. Accordingly, under the unique circumstances of this case, *Yang* does not apply.

## III. DEFENDANTS DID NOT WILLFULLY VIOLATE THE FCRA.

Defendants have shown in their motion for summary judgment why they did not willfully violate the FCRA. Doc. 53-1 at pp. 23-24. Nevertheless, Plaintiff seeks summary judgment as to Defendants' alleged willful violations of the FCRA. Doc. 48. He does not seek summary judgment for his damages or for any alleged negligent violations of the FCRA. *Id*. The Court should deny Plaintiff's PMSJ even if the Court finds that (1) Plaintiff had standing under Article III, and (2) the Insight scores were consumer reports under the FCRA, because the Defendants did not willfully violate the FCRA.

The FCRA permits awards of statutory and punitive damages only if a consumer reporting agency "willfully fails to comply with any requirement" imposed by the Act. 15 U.S.C. § 1681n(a)(2). Willful misconduct under the FCRA encompasses both intentional and reckless violations of the law. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). Reckless misconduct is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). For a willfulness claim to succeed, the defendant must have engaged in much more than unreasonable conduct; it must have run a risk of violating the law "substantially greater" than the

risk associated with mere carelessness. *Id*. at 69. Here, Plaintiff has failed to carry his burden to show that the alleged conduct of Equifax and NCTUE ran a risk substantially greater than mere carelessness. Here, there was no risk of harm to Plaintiff because the NCTUE data used to calculate the Insight Score was never provided to any third parties. It was only exchanged, in the form of an Insight Score viewable by Equifax's operators, between Equifax and NCTUE – the two entities that already had access to the data and were its stewards. Doc. 53-1 at pp. 23-24.

Equifax serves as NCTUE's vendor. Doc. 53-2 at ¶ 9. In that role, it provides operational services to NCTUE, including responding to consumer disputes and managing the NCTUE database. *Id*. at ¶¶ 9-11. Equifax did not obtain any NCTUE information that it did not otherwise already have access to through its role as NCTUE's vendor. *Id*. at ¶¶ 23-29; 40; 42-44. Equifax and NCTUE share the same interests in protecting the security of NCTUE data and assuring NCTUE's data reports are only used for a permissible purpose under the FCRA. *Id*. at ¶ 12. Equifax did not intend to violate the FCRA at all, let alone willfully, in its handling of NCTUE's data. *Id*. at ¶ 80.

Like Equifax, NCTUE did not willfully violate the FCRA. NCTUE has a longstanding contractual relationship with Equifax. *Id*. at ¶¶ 8-22. Based on this

longstanding relationship, NCTUE had every reason to believe that Equifax, a national consumer reporting agency, would comply with the FCRA in its use and management of NCTUE's data. *Id*. at ¶¶ 12-22. This belief is based on a number of factors, including: periodic audits of Equifax, quarterly meetings, and frequent calls to discuss operational issues. *Id*. at ¶¶ 20-22. In 2018,[3] upon learning of the circumstances that gave rise to this lawsuit, NCTUE, in an abundance of caution, asked Equifax to stop using NCTUE information to calculate Insight Scores in this way. Equifax did so. On these facts, Plaintiff's motion should be denied and Defendants' motion granted.

Finally, Plaintiff argues that NCTUE had "actual knowledge that Equifax was accessing NCTUE credit files when reinvestigating consumer disputes." Doc. 48-1 at p. 24. To support this, Plaintiff makes an overbroad and untrue characterization of the nature of certain communications between the parties that occurred after the settlement of a prior and separate lawsuit in this district that only

---

[3] In his motion, Plaintiff claims that NCTUE "demand[ed] that Equifax stop accessing NCTUE data reports" in the summer of 2016. Doc. 48-1 at p. 9. Not only did Equifax not access NCTUE data reports for all the reasons previously discussed, but the referenced conversation occurred in 2018, not 2016 as Plaintiff claims. While Mr. Moore initially testified the conversation happened in 2016, he simply made a mistake in recalling the dates. When he discovered the mistake while reviewing the deposition transcript, he provided an errata sheet to the court reporter. *See*, Supplemental Declaration of Alan Moore and Exhibit A thereto. Plaintiff's counsel was copied on the correspondence that provided the errata sheet.

involved allegations against Equifax, *Heagerty v. Ocwen Loan Servicing LLC*, 2:14-cv-00132-WCO. *Id.* at 25. ("Mr. Heagerty exchanged emails with an attorney at King & Spalding, Ms. Meryl Roper, who was representing both Equifax and NCTUE at the time.") The referenced exchange of emails related solely to the posting of inquiries that occurred during the pendency of the former lawsuit as a result of communications between Equifax and its outside counsel, and was not related in any way to the manner in which reinvestigations are conducted. Mr. Heagerty's unsupported speculation and extrapolation of this email exchange as a means of demonstrating NCTUE's alleged actual knowledge, therefore, does not create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("[s]peculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment.") Accordingly, Plaintiff's motion for summary judgment should be denied and Defendants' motion granted.

## **CONCLUSION**

For the foregoing reasons and those included in Defendants' MSJ, Defendants' motion should be granted, and Plaintiff's motion should be denied

Respectfully submitted this 17th day of June, 2019.

KING & SPALDING LLP

By: /s/ *J. Anthony Love*
J. Anthony Love (Ga. Bar No. 459155)
N. Charles Campbell (Ga. Bar No. 210929)
1180 Peachtree Street N.E.
Atlanta, Georgia 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
Email: tlove@kslaw.com
Email: ccampbell@kslaw.com
*Attorneys for Equifax Information Services LLC and NCTUE*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that 14-point New Times Roman was used for this Motion and that it has been formatted in compliance with Local Rule 5.1.

This 17th day of June, 2019.

*/s/ N. Charles Campbell*
N. Charles Campbell
