IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GLENN HEAGERTY,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )      CIVIL ACTION FILE NO.
                                   )      1:18-cv-01233-CAP-CMS
EQUIFAX INFORMATION                )
SERVICES LLC and NATIONAL          )
CONSUMER TELECOM &                 )
UTILITIES EXCHANGE, INC.,          )
                                   )
        Defendants.                )

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS
TO THE FINAL REPORT AND RECOMMENDATION**

On January 15, 2020, the Magistrate Judge issued a Final Report and
Recommendation (the "R&R") denying Defendants' Motion for Summary
Judgment. *See* Docket #76.   In the exhaustive, 70-page R&R, the Magistrate Judge
carefully analyzed the evidence of record, controlling precedent, persuasive
authorities and the arguments advanced by the Parties.   Based on that analysis,
the R&R held that: (1) Under the Fair Credit Reporting Act (the "FCRA"), Mr.
Heagerty had a "substantive" right to privacy with respect to his NCTUE
consumer reports; (2) Mr. Heagerty suffered "concrete" injuries when NCTUE
allowed Equifax to access Mr. Heagerty's NCTUE consumer reports without a
permissible purpose on more than 185 occasions; and, (3) Mr. Heagerty's claims

for emotional distress and willful violations of the FCRA present jury questions. These holdings are factually and legally correct, and the Court should overrule Defendants' Objections to the R&R for reasons explained below.

## I.    ARGUMENT AND CITATION OF AUTHORITY

A.    The R&R correctly holds that Mr. Heagerty suffered an invasion of his right to privacy, which is a concrete injury sufficient to confer Article III standing.

The undisputed facts establish that between June 25, 2014 and March 23, 2018, Equifax accessed confidential credit data contained in Mr. Heagerty's NCTUE credit file on at least 185 occasions.  R&R, p. 33.  That credit data consisted of Mr. Heagerty's account payment histories, the number of accounts in his name, the types of accounts that he held, his credit available, his credit used and the length of his credit histories.  R&R, p. 34.

Applying the 11th Circuit's decision in *Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1323 (11th Cir. 1998) to these facts, the R&R held that each transmission of Mr. Heagerty's credit data from NCTUE to Equifax was a "consumer report" under 15 U.S.C. § 1681a(d) because: (1) The data was "communicated by a consumer reporting agency," specifically NCTUE.  R&R, p. 45.  (2) The data had "bearing on" at least one of the factors identified in 15 U.S.C. § 1681a(d), *e.g.* Mr. Heagerty's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."   R&R, p. 46.  And, (3) the data was *collected* by NCTUE for a permissible purpose, *i.e.* to

be sold to NCTUE's members in the form of consumer reports.  R&R, p. 46.  In their Objections, Defendants do not contest any of these findings.

Significantly, the undisputed evidence of record also shows that Equifax did *not* have a permissible purpose to obtain consumer reports on Mr. Heagerty from NCTUE.  R&R, p. 40.  In fact, Defendants concede this point.  Docket #48-9, Response to Interrogatory No. 2; Docket #48-8, Response to Interrogatory No. 2.

Because Equifax was allowed access to Mr. Heagerty's NCTUE "consumer reports" *without* a "permissible purpose," the R&R properly holds that Mr. Heagerty suffered violations of his substantive right of privacy, which were concrete injuries sufficient to establish Article III standing.  R&R, pp. 27-40.  In reaching that conclusion, the R&R cited to and is supported by Congress' expressly stated purpose for enacting the FCRA, to wit: "There is a need to insure that consumer reporting agencies exercise their ***grave responsibilities*** with fairness, impartiality, ***and a respect for the consumer's right to privacy***." 15 U.S.C. § 1681(a)(4) (emphasis added); R&R, pp. 31-32.  The holding of the R&R is also supported by the prior decisions of this Court and a host of other authorities which are cited on pages 32-33 and 35-37 of the R&R.

B.    Under the FCRA, Mr. Heagerty has a substantive right to privacy with respect to his NCTUE consumer reports and that right is not "insignificant."

On pages 3-12 of their Objections, Defendants advance a series of arguments intended to trivialize the nature of the credit data contained in Mr. Heagerty's

NCTUE consumer reports, arguing that Mr. Heagerty does not have a "significant privacy interest" in that data. These arguments, some of which were *not* raised to the Magistrate Judge, share a common flaw. They ignore the fact that the credit data at issue in this case constituted "consumer reports." In order to "protect consumers' privacy rights, Congress structured the FCRA to include an elaborate set of interlocking provisions that restrict the access to and dissemination of ***consumer reports***." R&R, p. 30 (emphasis added). Consumers' privacy rights with respect to their consumer reports are "substantive" under the law, including the prior decisions of this Court. R&R, p. 33, *citing Ruk v. Crown Asset Management., LLC*, No. 1:16-cv-344-LMM-JSA, 2017 U.S. Dist. LEXIS 41797, at *16 (N.D. Ga. Mar. 22, 2017). And, obtaining a consumer report without a permissible purpose constitutes an invasion of a consumer's right to privacy that "is a sufficient 'concrete' injury upon which to base standing." *Id*.; R&R, p. 35. How Defendants choose to characterize the credit data in Mr. Heagerty's consumer reports is irrelevant. Because that data is a "consumer report," Mr. Heagerty has a privacy right with respect to it and standing to vindicate his rights.

      1.    <u>The zip code analogy</u>.

On page 6 of their Objections, Defendants compare Equifax's unauthorized access to Mr. Heagerty's NCTUE consumer reports to "the dissemination of an incorrect zip code, without more," which is mentioned in passing in *Spokeo v.*

*Robbins*, 136 S. Ct. 1540 (2016).  Based on that comparison, Defendants imply that the unauthorized disclosure of Mr. Heagerty's NCTUE consumer reports harmed him no more than would the disclosure of his zip code.

Defendants' "apples to oranges" comparison is flawed for several reasons. First, zip code information is what is commonly referred to as "header data," which is *not* a consumer report.  *In re Equifax, Inc.*, 362 F. Supp. 3d 1295, 313 (N.D. Ga. 2019).  As explained on page 30 of the R&R, the privacy of Mr. Heagerty's consumer reports is most certainly protected by the FCRA.  Second, unlike the credit data in Mr. Heagerty's NCTUE consumer reports, zip code data is not confidential.  Indeed, Mr. Heagerty's zip code is publicly-available and is even contained in the PACER files of this Court.  *See* Civil Docket for Case 2:14-cv-132-WCO.  Furthermore, the Supreme Court's reference to zip code data in the *Spokeo* case related to the issue of accuracy in consumer reports and the plaintiff's claim under 15 U.S.C. § 1681e(b).  In contrast, Mr. Heagerty does not contend that his NCTUE consumer report is inaccurate, nor does he assert a claim for violation of 15 U.S.C. § 1681e(b) in this case.

    2.    The "data attributes" characterization.

On page 8 of their Objections, Defendants attempt to characterize Mr. Heagerty's NCTUE consumer reports as nothing more than a collection of "data

attributes."  Defendants then argue that Mr. Heagerty did not suffer a concrete injury when Equifax obtained his "data attributes" without a permissible purpose.

Defendants cannot escape liability (or challenge Mr. Heagerty's standing) by simply making up a new term of art.  The phrase "data attributes" is not used in the FCRA or in the relevant case law.  Therefore, relabeling Mr. Heagerty's consumer reports as "data attributes" is irrelevant and meaningless.  The R&R correctly rejected Defendants' argument, holding that the credit data Equifax obtained from Mr. Heagerty's NCTUE credit file constituted "consumer reports" under 15 U.S.C. § 1681a(d).  R&R, pp. 44-47.  Mr. Heagerty's consumer reports are entitled to the privacy protections afforded by the FCRA, regardless of Defendants' linguistic sleight of hand.  Furthermore, allowing Defendants to avoid the requirements of the FCRA by relabeling consumer reports as "data attributes" would have disastrous consequences, *i.e.* it would allow Defendants to disclose consumers' confidential credit data without consequence.  The Court should reject Defendants' invitation to establish this dangerous precedent.

3.    The "utility credit data" vs. "traditional credit data" argument.

On page 8 of their Objections, Defendants also attempt to draw a distinction between "utility credit data" and "traditional credit data."  Specifically, Defendants argue that the data in Mr. Heagerty's NCTUE consumer reports does not "implicate a significant privacy interest" because it relates only to his accounts

with "utility service providers" and is not "traditional credit information like mortgage accounts, auto loans, credit cards," etc.

This novel argument has absolutely no basis in the language of the statute. The FCRA draws no distinction between credit data supplied by utility companies and credit data supplied by so-called "traditional creditors." Indeed, the FCRA's definition of the term "consumer report" is very broad and includes *any* data that has "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1). The utility credit data in Mr. Heagerty's NCTUE consumer reports meets this definition. R&R, p. 46. Therefore, Defendants violated Mr. Heagerty's substantive right to privacy when Equifax was allowed to obtain Mr. Heagerty's NCTUE consumer reports without a permissible purpose, regardless of the fact that the credit data therein was furnished by utility companies. Furthermore, exempting utility credit data from the privacy protections afforded by the FCRA would set a dangerous precedent for reasons explained above.

4.   The "full credit report" argument.

On pages 8-9 of their Objections, Defendants attempt to draw a distinction between a "full credit report" and Mr. Heagerty's NCTUE consumer reports at issue in this case. Specifically, Defendants contend that because the consumer reports that Equifax obtained from NCTUE contained *some*, but not *all*, of the data

in Mr. Heagerty's NCTUE credit file, those consumer reports are somehow entitled to a lesser degree of protection under the FCRA.

This argument has also no basis in the language of the statute.  From page 49 of the R&R: "By arguing that Equifax's conduct is excused because it accessed only a portion of NCTUE's data, Defendants would have this Court insert the words 'complete file' or 'all information' into the statutory definition [of the term consumer report], which this Court will not do."  Furthermore, Defendants' argument is contrary to the express language of 15 U.S.C. § 1681a(d)(1), which states that "[t]he term 'consumer report' means *any*  … *communication of any information* by a consumer reporting agency …." (emphasis added.)  Because the FCRA broadly defines "consumer report" to mean "any" communication of "any information" by a consumer reporting agency, even a portion of the information in Mr. Heagerty's NCTUE credit file constitutes a consumer report, as long as it meets the other requirements of 15 U.S.C. § 1681a(d)(1), *i.e.* it has "bearing on" at least one of the factors listed in subsection (d)(1) and was "used or expected to be used or collected" for a permissible purpose.

5.    The "morality data" vs. "credit data" argument.

On pages 9 - 11 of their Objections, Defendants state that Congress enacted the FCRA in order to protect the privacy of "highly sensitive" information regarding consumers' "moral character," such as "information on drinking,

marital discord, adulterous behavior, as well as a person's general reputation, habits and morals."  From this premise, Defendants argue that Mr. Heagerty did not suffer a concrete injury in fact in this case because his NCTUE consumer reports contained only credit data.

This curious argument is a *non-sequitur*.  Information regarding adultery, marital discord and the like are unquestionably private and should be protected by the FCRA, to the extent such information is in the possession of a consumer reporting agency.  However, that fact does not mean that Congress did not also intend to protect the privacy of consumer credit data.  Indeed, the definition of consumer report is very broad, encompassing not only information "bearing on a consumer's … character [and] general reputation," but also information "bearing on a consumer's credit worthiness, credit standing [and] credit capacity."  15 U.S.C. § 1681a(d).  Congress did not limit the definition of the term consumer report (or the protections afforded by the FCRA) to "morality data" and neither should this Court.

6.    The "prescreen" analogy.

On pages 11-12 of their Objections, Defendants attempt to analogize Mr. Heagerty's NCTUE consumer reports to so-called "prescreened" consumer reports.  From that premise, Defendants argue that, under the FCRA, prescreened consumer reports (and therefore Mr. Heagerty's NCTUE consumer reports) are

entitled to a lesser degree of privacy protection than "traditional" consumer reports. Both the premise and conclusion of that argument are flawed.

Mr. Heagerty's NCTUE consumer reports are *not* prescreened consumer reports. They were not obtained by Equifax pursuant to 15 U.S.C. 1681b(c)(1)(B)(i), and neither of the Defendants made Mr. Heagerty a "firm offer of credit or insurance" under that code section. Thus, even using Defendants' parlance, the consumer reports at issue in this case are "traditional" consumer reports and are therefore entitled to all of the privacy protections afforded by the FCRA.

Furthermore, Defendants' conclusion has no basis in the language of the statute. Regardless of whether a consumer report is obtained for one of the permissible purposes identified in 15 U.S.C. § 1681b(a) or is obtained in connection with a prescreen transaction "that is not initiated by the consumer" pursuant to 15 U.S.C. § 1681b(c)(1), it must be obtained for a permissible purpose. If a consumer report is obtained without a permissible purpose, then the consumer's substantive rights to privacy have been violated. R&R, p. 40. In this case, Defendants concede that Equifax did *not* have a permissible purpose to obtain Mr. Heagerty's NCTUE consumer reports. R&R, pp. 34 and 40; Docket #48-9, Response to Interrogatory No. 2; Docket #48-8, Response to Interrogatory No. 2. Thus, Equifax was not entitled to obtain consumer reports (prescreened or otherwise) on Mr. Heagerty and violated his right to privacy when it did so.

C.   <u>By accessing/allowing access to Mr. Heagerty's NCTUE consumer report without a permissible purpose, Defendants violated Mr. Heagerty's substantive right to privacy</u>.

On pages 12–16 of their Objections, Defendants advance a series of arguments intended to trivialize the injuries that Mr. Heagerty suffered when Equifax was allowed to repeatedly obtain his NCTUE consumer reports without a permissible purpose.  These arguments also share a common flaw. They focus on Equifax's subsequent use of Mr. Heagerty's NCTUE consumer reports, and not the violation of privacy that occurred when his consumer reports were obtained without a permissible purpose.  As the R&R correctly held, the privacy violations and related concrete injuries in this case occurred when Equifax obtained Mr. Heagerty's NCTUE consumer reports without a permissible purpose, not sometime thereafter and based on Equifax's subsequent use of the consumer reports it improperly obtained.  R&R, pp. 40 and 50.

1.   <u>The "raw data/Insight credit score" argument</u>.

On page 12 of their Objections, Defendants argue that they did not violate Mr. Heagerty's right to privacy because Equifax's employees did not actually see the credit data in his NCTUE consumer reports, but only his Insight credit scores, which were generated based on the data in Mr. Heagerty's NCTUE consumer reports.  That argument is without merit for several reasons.

First, as noted above, it fails to account for the privacy violation that occurred when Mr. Heagerty's NCTUE consumer reports were obtained by Equifax without a permissible purpose. From page 50 of the R&R: "The fact that specific Equifax operators were not able to view any of the underlying NCTUE data that went into creating … [Mr. Heagerty's] Insight [Credit] Scores does not alter the fact that Equifax obtained proprietary credit data from Plaintiff's NCTUE credit file … ." That data constituted consumer reports, and Mr. Heagerty suffered a concrete injury in fact when Equifax was allowed to obtain his NCTUE consumer reports without a permissible purpose. R&R, pp. 35-37 and 40.

Second, the admittedly private and confidential data in Mr. Heagerty's NCTUE consumer reports was not stripped of its private and confidential status merely because Equifax processed that data through a credit scoring model, like the Insight score. Credit scores themselves are confidential, as this Court has recognized. *Albu v. Home Depot, Inc.*, No. 1:15-CV-00412-ELR-JFK, 2016 U.S. Dist. LEXIS 185557 at *35, fn. 26 (N.D. Ga. November 2, 2016). And, Defendants concede that Equifax employees saw Mr. Heagerty's Insight credit scores that were generated using data from his NCTUE consumer reports. R&R, p. 14.

Third, Defendants' argument is contrary to Congress' purpose for enacting the FCRA, which was to protect consumers' privacy. 15 U.S.C. § 1681(a)(4). If Defendants can evade their obligations to maintain the privacy of consumer

reports simply by running the data contained in those reports through a credit scoring model, then consumers' right to privacy is materially compromised. The Court should decline Defendants' invitation to set this dangerous precedent, which, quite literally, elevates form over substance.

2. <u>The "CRA-to-CRA transfer" argument</u>.

On pages 13–14 of their Objections, Defendants argue that Mr. Heagerty's privacy rights were not violated because "Equifax is not an end-user [of consumer reports], but a CRA" *i.e.* a consumer reporting agency that is subject to the FCRA. In support of this argument, Defendants cite *Harmon v. RapidCourt, LLC*, No. 17-5688, 2018 U.S. Dist. LEXIS 197242 (E.D. Pa. November 20, 2018) for the proposition that CRA-to-CRA transfers of consumer reports cannot give rise to an injury in fact sufficient to confer standing.

Contrary to Defendants' arguments, the text of the FCRA does not exempt CRA-to-CRA transfers of consumer reports from the permissible purpose rule, a point that the Magistrate Judge expressly made.  From page 39 of the R&R:

> [T]he FCRA provision at issue in this case unequivocally provides that a CRA may furnish a consumer report only under the listed circumstances, "and no other." 15 U.S.C. § 1681b(a) …. When crafting the "permissible purpose rule," Congress could have made an exception for CRA-to-CRA transfers—i.e., allowing one CRA to provide a consumer report to another CRA without a permissible purpose — but it did not do so.

The Court should not judicially create such an exception, but apply the FCRA as enacted by Congress.

Furthermore, the R&R distinguishes the *Harmon* case on several grounds, including the fact that the plaintiff in *Harmon* did not (and could not) allege a violation of his right to privacy, since the defendant had a permissible purpose to obtain the plaintiff's report.  R&R, p. 39.  Instead, the *Harmon* case "involved obsolete criminal charges and a different provision of the FCRA that have no bearing on the case before this Court."  *Id.*  Had the *Harmon* case involved a privacy claim, the outcome would have been different, because the Third Circuit has recognized that "the improper disclosure of one's personal data in violation of [the] FCRA is a cognizable injury for Article III standing purposes." *In re Horizon Healthcare Services, Inc. Data Breach*, 846 F.3d 625, 641 (3rd Cir. 2017).

Finally, as a variant of this argument, Defendants also contend that Equifax's position is analogous to that of a "reseller" of consumer reports. That analogy is patently flawed.  Under the FCRA, resellers of consumer reports have a permissible purpose to obtain consumer reports, *i.e.* sale to an end user with a permissible purpose.  15 U.S.C. §§ 1681a(u) and 1681e(e).  Here, Equifax was not reselling Mr. Heagerty's NCTUE consumer reports, but was using those reports *for its own purposes*.  R&R, p. 51.  Therefore, unlike a reseller, Equifax did not have a permissible purpose to obtain Mr. Heagerty's reports.

3.    The "no publication" argument.

On page 16 of their Objections, Defendants argue that Mr. Heagerty suffered

no concrete injury because Defendants never provided his Insight credit score to

any "third party."  This argument was thoroughly considered and rejected by the

Magistrate Judge.  The R&R holds that, in the context of this case, Equifax was a

"third-party."  From page 50 of the R&R:

> Defendants also argue that they did nothing wrong because the
> Insight Scores were not "distributed to a third party for the purposes
> of determining a consumer's eligibility for credit, insurance, or
> employment," but this ignores the fact that Equifax is a distinct and
> separate corporate entity from NCTUE; thus, the NCTUE data was
> distributed to a third party, *i.e.*, Equifax.

That holding is firmly grounded in the evidence of record, which is recited, at

length, on pages 50-51 of the R&R.  Thus, Mr. Heagerty's right to privacy was

violated when NCTUE allowed Equifax, a "third-party," to access his NCTUE

consumer reports without a permissible purpose.  R&R, p. 51.

D.    The emotional distress that Mr. Heagerty suffered is a concrete injury in fact
      that provides a second and independent basis for standing in this case.

In this case, Mr. Heagerty contends that the emotional distress he suffered

as a result of Equifax obtaining his NCTUE consumer reports without a

permissible purpose constitutes a concrete injury in fact sufficient to establish

Article III standing.  R&R, pp. 26-27.  The R&R did not address that contention,

having found that the requirement of standing was satisfied by Mr. Heagerty's

claim that his substantive right to privacy was violated.   R&R, p. 58, fn. 10. Nevertheless, under the prior decisions of this Court, the emotional distress associated with impermissible access to a consumer report is a sufficient basis for standing.  *See e.g. Ruk*, 2017 U.S. Dist. LEXIS 41797 at *16 (holding that "the anxiety that plausibly attaches to learning about such an invasion of privacy [access to a consumer report without a permissible purpose], is a sufficient 'concrete' injury upon which to base standing.")  Thus, Mr. Heagerty's emotional distress claim provides a second and independent basis for Article III standing, a point that Defendants do not raise or dispute in their Objections.

E.    The Magistrate Judge correctly held that the evidence of record raised
      questions of fact regarding Mr. Heagerty's claim to have suffered emotional
      distress.

        In this District, it has long been the rule that "[i]n FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond his own testimony." *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006).  Indeed, for more than 15 years, this rule has been repeatedly applied and upheld.  *See, e.g., Bumpus v. National Credit Systems, Inc.*, No. 1:16-CV-1209-TWT-JFK, 2017 U.S. Dist. LEXIS 216542 at *33 (N.D. Ga. November 27, 2017) (holding that "Plaintiff's testimony is sufficient to create a genuine issue of material fact as to whether she suffered emotional distress …."); *McGhee v. Rent Recovery Solutions, LLC,* No. 1:17-cv-72-CC-JKL, 2018 U.S. Dist. LEXIS 220732 at *41 (N.D. Ga. July 6,

2018) (holding that "[i]n FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond h[er] own testimony."); *Carlisle v. National Commercial Services, Inc.*, No. 1:14-CV-515-TWT-LTW, 2017 U.S. Dist. LEXIS 39954 *49 (N.D. Ga. February 22, 2017); *Smith v. E-BackgroundChecks.com, Inc.*, No. 1:13-cv-02658-WBH-RGV, 81 F. Supp. 3d 1342, 1366 (N.D. Ga. 2014); *Moore v. Equifax Information Services LLC*, 333 F. Supp. 2d 1360, 1365 (N.D. Ga. 2004).

On pages 17–20 of their Objections, Defendants urge the Court to overrule this long line of case law, claiming that it is based on the *King* Court's erroneous reading of a footnote in the *Moore* case, *supra*.  Defendants' argument is without merit for several reasons.

First, it is not the Court, but Defendants who misread the *Moore* case.  In *Moore*, the plaintiff sued Equifax for violations of the FCRA, contending that he suffered emotional distress as a result of inaccurate information in his Equifax credit report.  333 F. Supp. 2d at 1363 and 1365.  Equifax moved for summary judgment, contending that the plaintiff's claim for emotional distress was "not supported by any evidence of an objective manifestation of such distress."  *Id*. at 1364.  The Court denied Equifax's motion, holding that "there is a genuine issue as to plaintiff's claims for damages for emotional distress …."  *Id*. at 1365.  That holding was expressly based on *only* the plaintiff's testimony, to wit: "***Plaintiff testified*** that he suffered humiliation and embarrassment as a result of Equifax's

inaccurate credit report."  *Id*. at 1365 (emphasis added).  In a footnote, the Court also rejected Equifax's contention that the plaintiff was required to prove an objective manifestation of his emotional distress.  *Id*. at 1365, fn. 3.  Therefore, contrary to the argument on page 20 of the Objections, the *Moore* case stands for two propositions: (1) In an FCRA case, a plaintiff's testimony regarding emotional distress is sufficient to raise a question for the jury and (2) the tort rule requiring an objective manifestation of emotional distress is not applicable in FCRA cases.

Second, in *King*, the Court properly applied the rule established in the *Moore* case.  As in *Moore*, the only evidence of record regarding the plaintiff's emotional distress in *King* was the plaintiff's own testimony, which was sufficient to create an issue of fact.  "Plaintiff has provided his own testimony in support of his allegations.  Based on this evidence, the Court cannot say, as a matter of law, that Plaintiff is not entitled to recover damages for emotional distress."  452 F. Supp. 2d at 1281.  The Court then cited to the *Moore* case at page 1365, which sets forth the holding described above.

Third, Defendants' Objection is also based on a misreading of the applicable case law from other circuits.  The non-binding authority cited by Defendants stands for the unremarkable proposition that evidence of emotional distress cannot be "vague," "conclusory" or "non-specific."  Thus, in *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432 (5th Cir. 2016), cited on page 17 of Defendants' Objections,

the court held that summary judgment was proper where the plaintiff's testimony regarding her emotional distress was "vague and conclusory," lacked "specificity" and "fail[ed] to show the nature and extent of the actual emotional harm." *Id.* at 436. In *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001), also cited on page 17 of the Objections, the plaintiff's testimony regarding his emotional distress was insufficient because it lacked the requisite "degree of specificity." *Id.* at 371. Similarly, in *Wantz v. Experian Info. Sols.*, 386 F.3d 829 (7th Cir. 2004), also cited on page 17 of the Objections, the court affirmed summary judgment on the plaintiff's claim for emotional distress where the only evidence supporting that claim was the plaintiff's "conclusory assertions." *Id.* at 835. These cases simply reaffirm the proposition that a plaintiff cannot avoid summary judgment based on vague, conclusory and non-specific testimony, which has long been the law in this Circuit and was duly recognized in the R&R. R&R, p. 3. Significantly, Defendants do not argue that Mr. Heagerty's testimony regarding his emotional distress is vague, conclusory or non-specific.

Finally, based on their repeated use of the phrase "self-serving" to describe Mr. Heagerty's testimony regarding his emotional distress, it is clear that Defendants are attacking Mr. Heagerty's *credibility*, not the sufficiency of his testimony. In fact, Mr. Heagerty's testimony is no more self-serving than is the testimony offered by Equifax's witnesses. *Thompson v. Metropolitan Multi-List, Inc.*,

934 F.2d 1566, 1578, fn. 9 (11th Cir. 1991) ("we would be surprised if any party ever submitted an affidavit that was not self-serving.").  Furthermore, credibility is not an issue that can be resolved on summary judgment.  *Id.*

F.   <u>The Magistrate Judge correctly held that the evidence of record raised questions of fact as to whether Defendants "willfully" violated the FCRA.</u>

On pages 62–67 of the R&R, the Magistrate Judge thoroughly analyzed the law, the evidence of record and Defendants' arguments regarding the issue of willfulness and properly held that Mr. Heagerty's claim that Defendants willfully violated the FCRA presented jury questions.

1.   <u>The evidence of record raises questions of fact whether Defendants "knowingly," and therefore "willfully," violated the FCRA.</u>

In their Objections, Defendants misanalyze both the legal framework for willful violations of the FCRA and the findings of the R&R.  Under controlling Supreme Court and 11th Circuit precedent, a willful violation of the FCRA can be established with evidence that a defendant either "knowingly" or "recklessly" violated the statute.  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007); *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1212 (11th Cir. 2019).  In this case, Mr. Heagerty contends, *inter alia*, that Defendants "knowingly" violated his rights under the FCRA, and the R&R identifies evidence of record raising jury questions with respect to that issue.  R&R, pp. 64-65 and 16.  In their Objections, Defendants

make no effort to address the evidence of their "knowing" violations of the FCRA, but focus exclusively on the question of "recklessness."

> 2.   The evidence of record raises question of fact whether Defendants "recklessly," and therefore "willfully," violated the FCRA.

Turning to the issue of "recklessness," Defendants also misanalyze the standard for determining whether a reckless violation of the FCRA has occurred. On page 22 of their Objections, Defendants cite the case of *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) for the proposition that recklessness is always a question of law when the issue is whether the defendant's interpretation of the FCRA was objectively unreasonable.   Defendants' reading of *Pedro* is simply wrong.   In *Pedro*, the 11th Circuit affirmed the district court's decision granting Trans Union's motion to dismiss.  *Id*. at 1278.   In doing so, the court rejected the appellant/plaintiff's argument that "willfulness is a question of fact almost never suitable to resolution on a motion to dismiss," but did not hold that the question of objective reasonableness was categorically a question of law.  *Id*. at 1282.   The court held that under the facts of the *Pedro* case, the plaintiff had failed to plead sufficient facts to state a claim that Trans Union's interpretation of the statute was objectively unreasonable.  *Id*. at 1283.   In contrast, the R&R was decided on summary judgment and cites evidence raising questions of fact as to whether Defendants' interpretation of the FCRA was unreasonable.  R&R, pp. 64-66.

a.   The evidence of record raises questions of fact as to whether Defendants' construction of the term "consumer report" was objectively unreasonable.

On pages 22-24 of their Objections, Defendants argue that, as a matter of law, it was objectively reasonable for them to assume that the credit data that Equifax obtained from Mr. Heagerty's NCTUE credit file was *not* a "consumer report." That argument is without merit for a myriad of reasons.

First, unlike the defendants in *Safeco*, Equifax and NCTUE were not dealing with a section of the FCRA that is "less than pellucid." 551 U.S. at 70. The definition of "consumer report" is unambiguous and expressly extends to data that is "collected" for a permissible purpose. *See* 15 U.S.C. § 1681a(d) and R&R, pp. 43 and 46-47. It is undisputed that the data in Mr. Heagerty's NCTUE credit file was "collected" for permissible purpose and therefore meets the definition of "consumer report." *Id*.

Second, unlike the defendants in *Safeco* and *Pedro*, in this case, Equifax and NCTUE had "the benefit of guidance" from not one, but two federal circuit courts. 551 U.S. at 70. As noted on pages 47-49 of the R&R, both the 11th and 5th Circuits have squarely addressed, and rejected, Defendants' construction of the term "consumer report." *See Yang*, *supra*, 146 F.3d at 1324 and *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 884 (5th Cir. 1989). And, those cases were not a close call. Indeed, in the *St. Paul* case, the 5th Circuit criticized the construction of the term

"consumer report" that Defendants rely on in this case, calling it "untenable," explaining that it creates "irreconcilable conflicts" between different provisions of the FCRA and illustrating the absurd results it produces.  844 F.2d at 884.

Third, Defendants cannot claim that they were unaware of the *Yang* and *St. Paul* cases.  The *Yang* case was decided 21 years ago, by the 11th Circuit, where Equifax is headquartered.   And, the *Yang* case actually involved an Equifax product called an "Inquiry Activity Report," which was held to be a consumer report on facts directly analogous to the facts of this case. 146 F.3d at 1324-25.  The *St. Paul* case was decided 30 years ago and was cited by the 11th Circuit in *Yang.*

Fourth, the R&R correctly notes that, as early as 2016, NCTUE's Executive Director knew that Equifax was accessing NCTUE credit files and directed NCTUE's outside counsel to instruct Equifax to stop doing so.  R&R, pp. 16 and 53-54.  This evidence, when construed in favor of the non-movant, Mr. Heagerty, raises an inference that Defendants were aware that their construction of the term "consumer report" was unreasonable and exposed them to liability.

      b.   <u>The evidence of record raises questions of fact as to whether Defendants' subjective belief that their contract gave Equifax the right to obtain Mr. Heagerty's NCTUE consumer reports was objectively unreasonable</u>

On pages 22-24 of their Objections, Defendants argue that, as a matter of law, it was objectively reasonable for them to believe that Equifax could obtain Mr. Heagerty's NCTUE consumer reports because doing so was supposedly

authorized by a contract between Equifax and NCTUE.  This argument was considered and properly rejected by the R&R for several reasons.

First, as noted on page 53 of the R&R, Defendants' contract limited Equifax's use of NCTUE consumer reports to only certain "'Authorized Uses,' which required 'a permissible purpose pursuant to the FCRA.'"  Defendants admit that Equifax did not have a permissible purpose to obtain Mr. Heagerty's NCTUE consumer reports in this case, as explained above.

Second, as noted on page 65 of the R&R, "Equifax was not acting as a vendor or in its role of providing database services to NCTUE" under the Defendants' contract when Equifax obtained Mr. Heagerty's NCTUE consumer reports. Rather, Equifax improperly used its status as a vendor "to access the data in Plaintiff's NCTUE credit file for its own purposes" and "did so with NCTUE's implied, if not actual, knowledge and tacit consent."  R&R, pp. 65-66.

Third, as noted above and on page 54 of the R&R, when NCTUE learned that Equifax was obtaining NCTUE consumer reports without a permissible purpose, NCTUE's Executive Director "directed NCTUE's outside counsel to instruct Equifax to stop the practice that was causing inquiries on Plaintiff's NCTUE file."  This evidence, construed in the light most favorable to Mr. Heagerty, raises a question of fact as to whether it was objectively reasonable for

Defendants to believe that their contract authorized Equifax to obtain Mr. Heagerty's NCTUE consumer reports.

Finally, it was not possible for Defendants to "reasonably" believe that Equifax was acting as a "reseller" under their contract when Equifax obtained Mr. Heagerty's NCTUE consumer reports.  Defendants did not "resell" Mr. Heagerty's NCTUE consumer reports to anyone.  Rather, as noted above and on page 65 of the R&R, Equifax obtained Mr. Heagerty's NCTUE consumer reports "for its [Equifax's] own purposes."  Under the circumstances, Defendants' "reseller" argument is patently meritless.

## II.   CONCLUSION

In light of the foregoing, Mr. Heagerty respectfully requests that Defendants' Objections to the Magistrate Judge's Final Report and Recommendation be overruled.

This 24th day of February, 2020.

**MCRAE BERTSCHI & COLE LLC**
Suite 200, 1350 Center Drive
Dunwoody, Georgia 30338

*Counsel for Plaintiff*

/s/ *Craig E. Bertschi*
Craig E. Bertschi
Georgia Bar No. 055739
ceb@mcraebertschi.com
678.999.1102

Charles J. Cole
Georgia Bar No. 176704
cjc@mcraebertschi.com
678.999.1105